2458.00026

# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| MICHAEL MURPHY, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 03-0864-CV-W-HFS |
| NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, *et al.* | ) ) ) ) |
| Defendants. | ) |

## DEFENDANT GARY HAMES AGENCY'S SUGGESTIONS IN SUPPORT OF MOTION TO EXCLUDE PLAINTIFF'S EXPERT WITNESS TESTIMONY

I. **NATURE OF THE MATTER BEFORE THE COURT.**

Plaintiff has attempted to designate Mr. Baker to testify as an expert witness in this case to assist plaintiff in proving his damages. Essentially, plaintiff apparently intends to prove his damages by introducing evidence of how six (6) mutual funds would have performed during the time commencing with the date on which plaintiff purchased the first policy at issue in this case and ending January 31, 2005. The problems with this are numerous. First, such evidence would be based on pure speculation as plaintiff has never invested in any of the six (6) mutual funds used by Mr. Baker.[1] In fact, when plaintiff received a check from defendant Northwestern when he surrendered the policies at issue, he did not invest the money in any mutual funds, but instead placed a portion of it into a CD and loaned the remaining money to his life partner for a real estate investment. Murphy depo. p. 268, l. 20 – p. 269, l. 19, attached hereto as Exhibit A. Second, Mr. Baker makes it very clear in his report and in his deposition that he is not

---

[1] Moreover, assuming it would be otherwise admissible, as set forth in defendants' pending motions for summary judgment, plaintiff cannot recover damages for mere economic loss which is exactly the type of loss which plaintiff is attempting to demonstrate through Mr. Baker's opinions.

qualified to select funds nor was he asked to give an opinion on which funds would have been appropriate for Mr. Murphy. Baker depo. p. 5, l. 3 – p. 6, l. 4; p. 43, ll. 7-14; p. 99, ll. 1-6, attached hereto as Exhibit B. Instead, Mr. Baker testified that a Mr. Halpin, an individual who has not been identified as an expert witness by plaintiff and is not even on plaintiff's witness list, selected the funds and the allocation of monies between the funds. Baker depo. p. 44, ll. 9-21. Mr. Baker had never met Mr. Halpin, was not aware of his qualifications and has no idea how or why Mr. Halpin selected these particular funds or determined the allocation between them. Baker depo. p. 44, l. 22 – p. 45, l. 19; p. 47, ll. 9-14; p. 116, ll. 5-25. Thus, Mr. Baker's testimony concerning plaintiff's potential damages based on these funds is completely improper. Third, in order to determine the values of the funds selected by Mr. Halpin on various dates, Mr. Baker went to a YAHOO internet website. Baker depo. p. 52, ll. 2-12. Mr. Baker is not the author of the website and made no effort to verify the information contained thereon. Baker depo. p. 53, ll. 7-15. Instead, Mr. Baker merely took the information provided to him from plaintiff's counsel concerning the amounts of money used by plaintiff to pay for his life insurance policies and the dates on which those payments were made and determined the shares of the mutual funds suggested by Mr. Halpin that this money would have purchased on those dates based on the pricing information he obtained from an unverified internet website.

      Mr. Baker is merely serving as a human calculator and there is absolutely no foundation for any of the information which he used to perform his calculations. As such, Mr. Baker's report and expert opinions are fundamentally flawed and he should not be allowed to testify in this case as an expert witness.[2] Accordingly, plaintiff should be precluded from calling Mr. Baker to testify as a witness and from using any of his calculations or damage summaries as evidence in this case.

---

[2] Mr. Baker has no personal knowledge concerning any of the events in this case and therefore he should not be allowed to testify as a fact witness either.

**II.     ISSUES PRESENTED.**

   A.  Whether the testimony of Mr. Baker should be excluded pursuant to Fed.R.Evid. 702 and the standards enunciated in <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993) and <u>Kumho Tire Co. v. Carmichael</u>, 119 S. Ct. 1167 (1999).

**III.     FACTS.**

   1.  Pursuant to the agreement of the parties, plaintiff's expert disclosures were due on or about February 25, 2005.

   2.  On or about February 21, 2005 plaintiff filed his preliminary witness list (Dkt. #89). Included in plaintiff's list at No. 32 were "expert witnesses identified by the parties".

   3.  On or about February 25, 2005, plaintiff provided the reports of two expert witnesses, William Gary Baker and Vincent Miccechi.

   4.  Ted Halpin is not identified in plaintiff's preliminary witness list (Dkt. #89) filed February 21, 2005, nor has he been identified as an expert witness by plaintiff.

   5.  In his supplemental disclosures pursuant to Federal Rule of Civil Procedure 26(A)(1) provided on December 29, 2004, plaintiff indicated pursuant to Rule 26(a)(1)(C) that he would be designating an expert who would provide responsive damages information "concerning all payments made by Plaintiff to Defendants for the contracts at issue, surrender payments made to Plaintiff by Defendants on the contracts at issue as well as financial data and information showing the additional profits Mr. Murphy could have earned during the time period at issue had he invested in a suitable retirement plan". <u>See</u> Exhibit C attached hereto at p. 4.

6. Mr. Baker was retained by plaintiff estimate the amount of money plaintiff would have had if he would have invested insurance premiums in a reasonably safe investment. Baker depo. p. 5, l. 3 – p. 6, l. 4; p. 43, ll. 7-14. Mr. Baker was not asked by plaintiff to provide any opinions as to which types of investment funds the money should have been placed in. Id. Mr. Baker has never met plaintiff and has never reviewed any of plaintiff's insurance policies. Baker depo. p. 99, ll. 10-15.

7. All Mr. Baker was asked to do was perform a mechanical process. Baker depo. p. 10, ll. 13-19. With his background and training, Mr. Baker would never presume to pick six investment vehicles for anyone. Baker depo. p. 99, ll. 1-6. Mr. Baker merely calculated how the investments provided by Mr. Halpin would have grown from one point in time to another. Baker depo. p. 99, ll. 1-6.

8. Mr. Baker understands the claims in the lawsuit to be about how prudent the recommendation for where the funds were placed. Baker depo. p. 11, ll. 4-10.

9. Mr. Baker has no formula that he follows in determining what the appropriate allocation for investments and each of his investments is based on his own personal preference. Baker depo. p. 15, ll. 5-17.

10. Exhibit 180 is plaintiff's expert witness disclosure of Gary Baker. Baker depo. p. 17, ll. 4-18.

11. Mr. Baker has not been asked to provide an opinion on whether the recommendations were appropriate or inappropriate. Baker depo. p. 20, l. 21 – p. 21, l. 5.

12. Mr. Baker has never provided expert opinion or testimony where he has been asked to analyze an investment such as stocks, life insurance, bonds or real estate.

Baker depo. p. 23, l. 16 – p. 24, l. 1.  He has not been asked to provide these opinions in this case either.  Id.

13. Mr. Baker does not hold any licenses or professional certifications beyond his educational degrees.  He does not have a CPA designation, any kind of financial planning designation nor a license to sell real estate or life insurance.  Baker depo. p. 27, l. 15 – p. 28, l. 6.  Mr. Baker has no experience with variable life and its benefits or variable annuities.  Baker depo. p. 92, ll. 19-25.

14. Mr. Baker has never given any presentations on using life insurance as an investment tool.  Baker depo. p. 28, ll. 15-22.

15. Revised report at his deposition to reduce account 13480030 by $5,999.00.  Baker depo. p. 30, ll. 4-9.

16. Mr. Baker received his information from a document that recorded when investments were made with the company.  Baker depo. p. 32, ll. 6-16.

17. Mr. Baker used the Insurance Account Service Histories produced by defendant Northwestern Mutual in this litigation (Exhibit 181) to learn that plaintiff invested money in three separate accounts, the amounts of the investments and timing of the investments.  Baker depo. p. 39, l. 18 – p. 40, l. 4; p. 40, l. 12 – p. 41, l. 9; p. 42, l. 14 – p. 43, l. 2.

18. The documents Mr. Baker relied on in determining the amount of money plaintiff would have had if he would have invested insurance premiums in a reasonably safe investment were provided to him by Ted Halpin, a CPA and president of EFH Management.  Baker depo. p. 44, ll. 9-21.  These documents are Exhibit 182 to the deposition and consist of thirteen (13) pages of information from internet websites.

Baker depo. p. 50, ll. 14-21.  Mr. Baker did nothing to determine whether Mr. Halpin was qualified to provide the investment information.  Baker depo. p. 116, ll. 5-25.

19. Once Mr. Baker received the documents from Mr. Halpin, he did nothing to independently look into whether the investments that Mr. Halpin were recommending would be reasonably safe investments. Baker depo. p. 47, ll. 9-14.  He did not get onto the specific websites referenced in the exhibit to verify the information contained in Exhibit 182.  Baker depo. p. 51, ll. 10-12.  Mr. Baker did not make the selections of the investments made but merely relied on the investments recommended by Mr. Halpin. Baker depo. p. 95, l. 11 – p. 96, l. 21. The documents Mr. Halpin sent to him contain incomplete sentences and paragraphs.  Baker depo. p. 89, l. 17 – p. 90, l. 23.  Mr. Baker did not ask Mr. Halpin about the missing information.  Id.

20. Mr. Baker has never met Mr. Halpin and they have three telephone conversations with each other.  Baker depo. p. 44, l. 22 – p. 45, l. 19.  Mr. Baker has never had any other involvement with Mr. Halpin prior to this lawsuit and his name was provided to him by plaintiff's counsel.  Id.  Mr. Baker does not know if Mr. Halpin had ever given plaintiff any investment advice or how Mr. Halpin came up with the six funds used in his report.  Baker depo. p. 91, ll. 9-21.  Mr. Baker had never heard of the mutual fund recommended by Mr. Halpin before.  Id.  Mr. Baker did not compare the performance of the mutual fund recommended by Mr. Halpin to some other family funds. Baker depo. p. 93, ll. 1-4.

21. Mr. Baker did not do anything to verify that Mr. Halpin was qualified to give an opinion as to what would be a reasonably safe investment.  Baker depo. p. 46, l.

15 – p. 47, l. 22.  Mr. Baker is not providing an expert opinion as to whether these recommendations would be a reasonably safe investment.  Baker depo. p. 47, ll. 18-22.

22.	Mr. Baker's report reflects the specific investments that Mr. Halpin recommended he use.  Baker depo. p. 48, ll. 4-21; p. 49, l. 3 – p. 50, l. 8.  Mr. Baker does not know anything about the specific investments Mr. Halpin suggested.  Baker depo. p. 49, l. 24 – p. 50, l. 8.

23.	Mr. Baker consulted a YAHOO finance website to determine the present value of the accounts recommended by Mr. Halpin.  Baker depo. p. 52, ll. 2-12.  The information is marked as Exhibit 183.  Baker depo. p. 67, ll. 10 – 22. Mr. Baker does not know where the information that is placed on the website comes from and did nothing to independently verify the information that he received from the website.  Baker depo. p. 53, ll. 7-15.  Mr. Baker used the information available on the YAHOO website and used a computer and a spreadsheet to calculate the value for all six accounts.  Baker depo. p. 53, l. 20 – p. 54, l. 15; p. 54, l. 24 – p. 55, l. 4.

24.	Mr. Baker's calculations do not take into consideration tax implications or transaction costs on the various investments.  Baker depo. p. 55, l. 21 – p. 56, l. 22.  There may also be some management fees and reimbursement fees.  Baker depo. p. 86, l. 25 – p. 87, l. 6; p. 87, l. 21 – p. 88, l. 6.  These costs could change or vary the numbers shown on his report.  Baker depo. p. 55, l. 21 – p. 56, l. 22.  Mr. Baker does not deal in taxes and does not know what tax ramifications there would be on the investments.  Baker depo. p. 86, ll. 5-22.

25. The date Mr. Baker chose to stop calculating the value of the investments was January 31, 2005 which was the last full month before his report was due. Baker depo. p. 57, ll. 1-16. He had not been asked to make calculations beyond this date. Id.

26. Mr. Baker has not been asked to perform a comparison concerning the performance of the plaintiff's monies in the investment that is contained in his report with the investments he actually had the money in. Baker depo. p. 64, ll. 8-13.

27. Mr. Baker does not know if the returns on the investments recommended by Mr. Halpin are better or worse than the average results. Baker depo. p. 97, ll. 21-24.

IV. **ARGUMENT AND AUTHORITIES.**

  A. **Standard for the Admission of Expert Testimony.**

The admission of expert testimony is guided by Fed.R.Evid. 702 which provides that,

> "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case."

Pursuant to Rule 702 the Court must ultimately determine whether the expert testimony proffered is reliable. See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993). The Court must make a preliminary assessment of whether the reasoning or methodology underlying the testimony is valid and of whether that reasoning or methodology can be properly applied to the facts in issue. Id. at 592-93. Whether the proffered expert testimony is scientific in nature or is testimony of a technical or other specialized nature, a Court should consider the following factors which

reflect upon the reliability of such testimony: (1) whether the theory or technique can be and has been tested; (2) whether it has been subjected to peer review and publication; (3) whether, in respect to a particular technique, there is a high known or potential rate of error and whether there are standards controlling the technique's operation; and, (4) whether the theory or technique enjoys general acceptance within a relevant scientific community. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 149-150 (1999). In evaluating expert testimony of a non-scientific nature, the trial court is given great flexibility in its ultimate determination of reliability and in its application of these factors to the facts of the case. See id. at 150.

      **B.**    **The Testimony of Mr. Baker is Not Expert Testimony.**  Mr. Baker's testimony in this case will not be "expert" testimony. He has not been asked to give any "opinion" other than to calculate the values of certain mutual funds purchased on certain dates. In essence, Mr. Baker is simply doing calculations based on opinions of an undisclosed witness (Mr. Halpin) and hearsay from an internet website. Baker depo. Baker depo. p. 53, l. 20 – p. 54, l. 15; p. 54, l. 24 – p. 55, l. 4; p. 99, ll. 1-6. In other words, Mr. Baker's "expert" testimony in this case would be as a human calculator.

It is pure speculation that plaintiff would have ever invested any money in the mutual funds suggested to Mr. Baker by Mr. Halpin. It is pure speculation that plaintiff would have allocated any investment in these funds in the percentages suggested to Mr. Baker by Mr. Halpin. It is pure speculation that plaintiff would have purchased the mutual funds on the days and times suggested to Mr. Baker by plaintiff's counsel. At the request of plaintiff's counsel, Mr. Baker made no allowance for any costs, such as management fees or taxes, associated with investing in the funds suggested to him by Mr.

Halpin and does not even know what those management fees or taxes would be. Mr. Baker obtained his information on the values of the mutual funds on various dates from an unverified internet website. Thus, even the conclusion reached by Mr. Baker as to what the mutual funds value would be is speculation.

Aside from the speculative nature of Mr. Baker's report, the even bigger problem is that Mr. Baker admits repeatedly that he is not qualified to select funds and that he offers no opinion on what funds plaintiff should have invested in or in what percentages. Plaintiff instead had a Mr. Halpin determine what the investments should have been and in what percentages. Mr. Halpin is not designated as either a fact or expert witness and plaintiff's attempt to sneak his opinion in through the testimony of Mr. Baker is completely improper. U.S. v. Grey Bear, 883 F.2d 1382 (8th Cir. 1989) cert. denied 493 U.S. 1047, on subsequent appeal 991 F.2d 1406 (evidence rules do not permit an expert witness to circumvent the rules of hearsay by testifying that other experts, not present in the courtroom, not corroborate his views); Stancill v. McKenzie Tank Lines, Inc., 497 F.2d 529 (5th Cir. 1974)(predication of one opinion upon another is impermissible); Taylor v. B. Heller & Co., 364 F.2d 608 (6th Cir. 1966)(expert opinion may not be based upon opinion of others, either in evidence or not in evidence, and since expert's opinion of value of going concern was based, not upon facts provide at trial, but upon the opinion of others who were not even qualified nor present at trial, admission of such opinion was error).

An expert's skill, experience, training and education must be in the field in which they are offering an opinion. See e.g. United States v. Swanquist, 161 F.3d 1064, 1074 (7th Cir. 1998) (an accountant with no banking experience was not qualified as an expert

to testify regarding what forms of financing were acceptable within the banking community). Mr. Baker is simply not qualified by his education or training to opine on the subject matters contained within his expert report and plaintiffs' "damage" calculations should not be clothed with the aura of accuracy based on the use of an unqualified and unnecessary "expert".

A trial court's gate keeping function requires more than just taking an experts word for it. See Fed. R. Evid. 702(1) (requiring that an expert opinion be "based upon sufficient facts or data"); Daubert v. Merrell Dow Pharmaceuticals, Inc., 43 F.3d 1311, 1319 (9th Cir. 1995) ("We've been presented with only the expert's qualifications, their conclusions and their assurances of reliability. Under *Daubert*, that's not enough."); see also O'Conner v. Commonwealth Edison Co., 13 F.3d 1090, 1106 (7th Cir. 1994) (court must exclude expert testimony based upon subjective belief or unsupported speculation); Miller v. Heaven, 922 F. Supp. 495, 501 (D. Kan. 1996) (quoting Daubert) ("Proposed testimony must be supported by appropriate validation - i.e. 'good grounds,' based on what is known."). This lack of authority and the lack of any other underpinning for Mr. Baker's opinion clearly renders his opinions unreliable.

## V. CONCLUSION.

For the reasons above stated, the Court should exclude the expert testimony of Mr. Baker from presentation at trial. In addition, defendant would ask that Mr. Baker's expert report which contains damage calculations which are not based on any reliable or admissible evidence be excluded from presentation at trial. Finally, Mr. Baker should not be allowed to testify as a "fact" or "foundation" witness at trial.

Respectfully submitted,

McANANY, VAN CLEAVE & PHILLIPS, P.A.
707 Minnesota Ave., Fourth Floor
Post Office Box 171300
Kansas City, Kansas 66117-1300
Telephone:   (913) 371-3838
Facsimile:   (913) 371-4722


/s/ Gregory P. Goheen
GREGORY P. GOHEEN          Ks. #16291
DOUGLAS M. GREENWALD       Mo.#34969

Attorneys for Defendant Gary Hames Agency

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served through the Court's ECF system and/or mailed, postage pre-paid, on this 6th day of June, 2005.

Patrick J. Stueve
Stueve, Helder, Siegel, LLP
330 West 47th Street, Suite 250
Kansas City, Missouri 64112

Attorneys for Plaintiffs

Kara Dorssom
Husch & Eppenberger, LLC
1200 Main Street, Suite 1700
Kansas City, Missouri 64105

Frank Burt
Waldemar J. Pflepsen, Jr.
Michael Kentoff
Jorden Burt, LLP
1025 Thomas Jefferson Street, NW
Suite 400 East
Washington, DC 20007-5208
Attorneys for Defendants Northwestern Mutual Life Insurance Company and Northwestern Mutual Investment Services

Richmond Enochs
Wallace, Saunders, Austin, Brown & Enochs, Chartered
2300 Main Street, Suite 900
Kansas City, Missouri 64108
Attorneys for Defendant Thomas G. Lipscomb, III

                                      /s/ Gregory P. Goheen_____